1

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10   JAMES DALE MOSELEY,

11                    Plaintiff,                CASE NO. 3:16-CV-05698-BHS-JRC

12          v.                                  REPORT AND RECOMMENDATION

13   WASHINGTON DEPARTMENT OF                   NOTED FOR: JANUARY 6, 2017
     CORRECTIONS et al.,
14
                      Defendants.
15

16          This 42 U.S.C. §1983 civil rights matter has been referred to the undersigned Magistrate

17   Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1,

18   MJR 3, and MJR 4. Before the Court is defendants' motion to dismiss. Dkt. 21.

19          Plaintiff alleges that he was incorrectly classified as maximum security at the Monroe

20   Correctional Complex and that he was not afforded due process with respect to this classification

21   decision. Because plaintiff has no constitutionally protected right to classification status, he has

22   not demonstrated a deprivation of a constitutional right and the Court recommends that

23   plaintiff's classification claim be dismissed with prejudice. With respect to his due process

24   claim, plaintiff has failed to allege facts showing that he suffered an atypical and significant

REPORT AND RECOMMENDATION - 1

1  hardship or that he was denied the opportunity to present his case, and thus, the Court

2  recommends granting defendants' motion to dismiss.

3        However, because plaintiff's opposition to defendants' motion appears to allege

4  additional facts to support plaintiff's due process claim, the Court recommends that plaintiff be

5  granted leave to amend his complaint as to this claim.

6                              **STANDARD OF REVIEW**

7        A court may grant a motion to dismiss for failure to state a claim under Rule 12(b)(6) of

8  the Federal Rules of Civil Procedure "if it appears beyond doubt that the plaintiff can prove no

9  set of facts in support of his claim that would entitle him to relief." *Keniston v. Roberts*, 717 F.2d

10 1295, 1300 (9th Cir. 1983) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1990)). Mere

11 conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of

12 action" are not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Chavez v.*

13 *United States*, 683 F.3d 1102, 1108-09 (9th Cir. 2012).  "Dismissal can be based on the lack of a

14 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

15 theory." *Ballistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).

16       On a motion to dismiss, material allegations of the complaint are taken as admitted and

17 the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S.

18 411, 421 (1969), *reh'g denied,* 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290

19 (9th Cir. 1977). When a plaintiff is proceeding *pro se*, his allegations must be viewed under a

20 less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner,*

21 404 US 519 (1972), *reh'g denied,* 405 U.S. 948 (1972); *Bretz v. Kelman,* 773 F.2d 1026, 1027 n.

22 1 (9th Cir.1985) (en banc) (petitioner should be afforded the "benefit of any doubt").

23

24

1   While the court can liberally construe a plaintiff's complaint, it cannot supply an essential

2   fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (*quoting*

3   *Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). The court

4   need not accept as true unreasonable inferences or conclusory legal allegations cast in the form

5   of factual allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

6   **PROCEDURAL HISTORY**

7   Plaintiff was granted *in forma pauperis* status on September 20, 2016. Dkt. 7. Plaintiff's

8   complaint was filed the same day, *see* Dkt. 8.  Defendants filed their motion to dismiss on

9   October 21, 2016. Dkt. 21. Plaintiff filed a response. Dkt. 25. Defendants filed a reply. Dkt. 26.

10   **MATERIALS FOR CONSIDERATION**

11   On October 5, 2016, plaintiff filed several exhibits in support of his complaint including

12   the DOC Custody Plan and his appeal to DOC headquarters. Dkt. 15. Because the materials were

13   submitted as part of the complaint, the Court will rely on these documents in addressing

14   defendants' motion to dismiss. *See Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236

15   F.3d 1077, 1083 (9th Cir. 2001).

16   **STATEMENT OF FACTS**

17   Plaintiff, James Dale Moseley, is a Washington state prisoner in the custody of the

18   Department of Corrections ("DOC") and is currently housed at the Monroe Correctional

19   Complex ("MCC"). *See* Dkt.  Based on the exhibits submitted in support of plaintiff's complaint,

20   it appears that plaintiff was housed at the Special Commitment Center ("SCC") when he received

21   his current charges, and was then transferred to DOC custody to serve his sentence. Dkt. 15 at 4.

22   Plaintiff's alleges that his constitutional rights were violated when he was placed in the

23   MCC Intensive Management Unit ("IMU") on June 7, 2016. Dkt. 8 at 3. Plaintiff alleges that he

24   was "slated" to go to closed custody general population but was referred to maximum custody.

1   *Id.* Plaintiff alleges that his classification decision went before the Intensive Management Status

2   ("IMS") Committee and his placement in IMU was finalized on July 11, 2016. *Id.* Plaintiff does

3   not allege whether he attended an IMS hearing regarding his classification, but the exhibits filed

4   in support of his complaint do not show that he was in attendance. Dkt. 15 at 3. Plaintiff does not

5   allege any facts as to whether he was able to present his case to the IMS Committee. *See* Dkts. 8,

6   15. Plaintiff alleges that he is mentally ill and that defendants did not take into account the

7   effects of segregation on plaintiff's health. Dkt. 8 at 3.

8        On July 20, 2016, plaintiff sent a letter appealing his classifications status. Dkt. 15 at 2.

9   On August 1, 2016, Robert Herzog, Deputy Director, responded to plaintiff's appeal. Dkt. 15 at

10  2. Mr. Herzog stated that while plaintiff was in custody of the Department of Social and Health

11  Services and residing at the SCC, he exhibited threatening and assaultive behavior. *Id.* From

12  October 2015 to January 2016, plaintiff assaulted another resident, refused staff directives, and

13  threatened and assaulted staff. *Id.* Based on these offenses, the IMS Committee determined that

14  plaintiff should be housed in IMU. *Id.* at 2-3.

15       Plaintiff requests that he be released from IMU into general population and that the

16  prison general population be changed so that no other inmate can be placed in segregation as

17  their initial classification. *Id.* at 4. Plaintiff also seeks $3,500 in damages for mental suffering

18  while in segregation. *Id.*

19                                          **DISCUSSION**

20       To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the

21  defendant must be a person acting under color of state law and (2) his conduct must have

22  deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of

23  the United States. *Paratt v. Taylor*, 451 U.S. 527 (1981). A third element of causation is implicit

24

1   in the second element. *See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274,

2   286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert denied*, 449 U.S.

3   875 (1980).

4       Defendants do not object that they were acting under the color of state law and thus, the

5   Court addresses whether defendants' conduct deprived plaintiff of any constitutional rights.

6       **A.  Classification**

7       The Supreme Court has routinely held that federal prisoners have no constitutionally

8   protected right to classification status pursuant to the Fourteenth Amendment. *See, e.g.*

9   *Camarena v. Adams*, 11 Fed.Appx. 789, 790 (9th Cir. 2001); *Moody v. Daggett*, 429 U.S. 78, 88

10   n. 9 (1976). The Eighth Amendment similarly provides no such protection, since "the mere act of

11   classification does not amount to an infliction of pain." *Myron v. Terhune*, 476 F.3d 716, 719

12   (9th Cir. 2007). The Ninth Circuit applied this to Washington state prisoners, holding that they

13   too have no constitutional right to classification status. *See Hernandez v. Johnston*, 833 F.2d

14   1316, 1318 (9th Cir. 1987).

15       Therefore, plaintiff has not demonstrated a deprivation of a constitutional right regarding

16   his classification status at MCC. The Court recommends granting defendants' motion as to this

17   claim without leave to amend.

18       Plaintiff also states that defendants failed to consider his mental health, but he provides

19   no factual allegations to support this claim. To the extent that plaintiff seeks to pursue a

20   conditions of confinement claim related to his mental health treatment, plaintiff is advised that

21   "the treatment a prisoner receives in prison and the conditions under which he is confined are

22   subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

23

24

1    If a prison official shows "deliberate indifference" to an inmate's health or safety, he will be in

2    violation of this amendment. *Farmer v. Brennan*, 511 U.S. 824, 834 (1994).

3          **B.  Due Process**

4          Although plaintiff's complaint is not entirely clear, it also appears that he alleges that

5    defendants violated his due process rights when they placed plaintiff in IMU. Dkt. 8 at 3. "It is

6    well-established that '[t]he requirements of procedural due process apply only to the deprivation

7    of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'"

8    *Burnsworth v. Gunderson,* 179 F.3d 771, 774 (9th Cir. 1999) (*quoting Bd. of Regents of State*

9    *Colleges v. Roth*, 408 U.S. 564, 569 (1972)).  "Under *Sandin*, a prisoner possesses a liberty

10   interest under the federal constitution when a change occurs in confinement that imposes an

11   'atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Resnick*

12   *v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (*quoting Sandin v. Conner*, 515 U.S. 472, 484

13   (1995).  "There is no single standard for determining whether a prison hardship is atypical and

14   significant, and the 'condition or combination of conditions or factors [of the alleged hardship] . .

15   .  requires case by case, fact by fact consideration.'"  *Ramirez,* 334 F.3d at 861 (*quoting Keenan*

16   *v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)). Thus, the first step of the due process analysis is to

17   determine whether plaintiff has a liberty interest protected by due process as to his placement in

18   IMU at MCC.

19         Prison inmates have a right to due process in connection with placement in more

20   restrictive facilities or to other housing within a prison only when such placement imposes an

21   "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

22   life." *Sandin,* 515 U.S. at 484; *see also Ramirez,* 334 F.3d at 860. In *Sandin,* the United States

23   Supreme Court held that an inmate in Hawaii had no liberty interest in freedom from a period of

24

REPORT AND RECOMMENDATION - 6

disciplinary segregation that lasted thirty days where the evidence showed that the conditions in such segregation "with insignificant exceptions, mirrored those conditions imposed on inmates in administrative segregation and protective custody," and the segregation did not "inevitably affect" the length of his prison sentence. *Id.* at 486-87.

While segregation "typically . . . in and of itself does not implicate a protected liberty interest," it may do so under certain circumstances. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (handicapped inmate confined in administrative segregation for two months without use of his wheelchair suffered an atypical and significant hardship), *cert. denied*, 543 U.S. 825 (2004). *See also, Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) (allegations of three-custody levels materially different from one another causing major disruption to prisoner's environment sufficiently plead §1983 due process claim); *Ramirez*, 334 F.3d at 861 (reversing and remanding dismissal of due process claim for application of *Sandin* factors where prisoner alleged his segregated unit was overcrowded and violent, isolation severed ties with his family, he was required to participate in psychiatric programs, and he was in confinement for two years). "What less egregious condition or combination of conditions or factors would meet the test requires case by case, fact by fact consideration." *Kennan*, 83 F.3d at 1089.

In the limited circumstances where such a right exists, "due process requires only the following procedures: prison officials must hold an informal non-adversary hearing within a reasonable time after the prisoner is segregated. The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation. Prison officials must allow the prisoner to present his views." *Toussaint v. McCarthy,* 801 F.2d 1080, 1100 (9th Cir. 1986) (footnote omitted). "[D]ue process does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written

1    decision describing the reasons for placing the prisoner in administrative segregation." *Id.* at

2    1100-01.

3            Here, plaintiff acknowledges that he was placed in segregation due to his past offenses at

4    the SCC. Dkt. 8 at 3, Dkt. 15 at 2.  In his complaint, plaintiff alleges that defendants failed to

5    take into account the effect of segregation on his mental illness, but he does not describe how the

6    conditions of his segregation amounted to an atypical or significant hardship. *See Sandin,* 515

7    U.S. at 484. The allegations related to the process he was afforded are less clear. Plaintiff alleges

8    that he was informed of the reason for his placement in segregation and was able to appeal his

9    placement in IMU. Dkt. 8 at 3; Dkt. 15 at 2. However, it is not clear whether plaintiff was able to

10   present his case or submit information regarding his placement in IMU. *See id.* It does not appear

11   that plaintiff attended the hearing on July 11, 2016 regarding his classification status. Dkt. 15 at

12   2-4.

13           In opposition to defendants' motion, plaintiff attempts to supplement the allegations in

14   his complaint. Dkt. 25. Plaintiff alleges that his placement in IMU affects the duration of his

15   sentence because he is losing earned time and his release date is pushed back five days every

16   month. Dkt. 25 at 1. Plaintiff alleges that his mental health has deteriorated since his placement

17   in IMU, and that he has had three medical procedures to remove swallowed objects. *Id.* Plaintiff

18   also alleges that he never had a hearing with the IMS Committee and was not able to present his

19   case. *Id.* In ruling on defendants' motion, the Court must rely only on the allegations contained

20   in plaintiff's complaint, Dkt. 8, and the attached exhibits, Dkt. 15.  *See Broam v. Bogan*, 320

21   F.3d 1023, 1026 (9th Cir. 2003). However, plaintiff's response alleges additional facts

22   supporting an atypical and significant hardship and that he was denied due process, and thus, he

23   may be able to overcome the deficiencies of his complaint and state a due process claim if he is

24

1   given an opportunity to amend his complaint. *See Eldridge v. Block*, 832 F.2d 1132, 1135-36

2   (9th Cir. 1987) (The Ninth Circuit has "established that a pro se litigant bringing a civil rights

3   suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear

4   that they cannot be overcome by amendment."). Accordingly, the Court recommends granting

5   defendants' motion as to plaintiff's due process claim, but gives plaintiff leave to amend to

6   attempt to cure the deficiencies of his complaint.

7        The Court also notes that in his opposition to defendants' motion, plaintiff alleges that

8   defendants violated plaintiff's rights under the First Amendment by placing plaintiff in IMU in

9   retaliation for plaintiff's assaultive conduct. Dkt. 25. As stated above, the Court will not consider

10  any supplemental claims not alleged in his complaint. To the extent that plaintiff seeks to pursue

11  a First Amendment retaliation claim, he is advised that he must allege facts to show: (1) he was

12  subjected to adverse action; (2) the adverse action was imposed because of certain conduct; (3)

13  the conduct giving rise to the adverse action is legally protected; (4) the adverse action chilled

14  the prisoner's speech; and (5) the adverse action did not advance a legitimate penological goal.

15  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

16                                    CONCLUSION

17       For the reasons set forth above, the Court recommends granting defendants' motion to

18  dismiss (Dkt. 21) as to plaintiff's classification claim without leave to amend. The Court

19  recommends granting defendants' motion as to plaintiff's due process claim but that plaintiff be

20  granted leave to amend his complaint.

21       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

22  fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P.

23  6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.

24

REPORT AND RECOMMENDATION - 9

1    *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the

2    Clerk is directed to set the matter for consideration on **January 6, 2017** as noted in the caption.

3         Dated this 14th day of December, 2016.

4

5    _____
     J. Richard Creatura

6    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24